NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――

No. 05-2345

―――

BEATA A. STARK; NORMAN A. STARK;
BEATA CLINICAL RESEARCH SERVICES,

*Appellants*

v.

EAR NOSE & THROAT SPECIALISTS OF NORTHWESTERN
PENNSYLVANIA, P.C.; JACK B. ANON, INDIVIDUALLY;
ROBERT BUDACKI, INDIVIDUALLY; SETH ANON, INDIVIDUALLY;
ELLEN ANON; and OTHERS to be identified

―――

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-00032E)
District Judge: Honorable Sean J. McLaughlin

―――

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 19, 2006

Before: RENDELL and VAN ANTWERPEN, *Circuit Judges*, and
ACKERMAN, *Senior District Judge.**

(Filed:   May 19, 2006 )

―――

* The Honorable Harold A. Ackerman, Senior District Judge for the District of New Jersey, sitting by designation.

―――

OPINION OF THE COURT

VAN ANTWERPEN, *Circuit Judge*.

Appellants Beata Stark, Norman Stark, and Beata Clinical Research Services (hereinafter "Stark" or "BCRS") appeal from the District Court's dismissal of antitrust claims pursuant to Federal Rule of Civil Procedure 12(b)(6) in favor of appellees Dr. Jack Anon, Ear Nose & Throat Specialists of Northwestern Pennsylvania, P.C. (Anon's medical practice), Anon's wife and son, and an employee, Robert Budacki (hereinafter "Anon" or "ENT," collectively). We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

I.

Only Stark's antitrust claims are before us.[1] We exercise plenary review of the grant of a motion to dismiss and accept as true all factual allegations in the complaint, viewing them in the light most favorable to Stark and BCRS. *See, e.g., Doug Grant, Inc.*

---

[1] Stark's first amended complaint pursued some 17 federal and state causes of action, including claims under both Section 1 (restraint of trade) and Section 2 (monopolization) of the Sherman Act, 15 U.S.C. § 1 *et seq.*; claims under 42 U.S.C. §§ 1981, 1983, 1985, and Title IX; and state law claims of defamation, civil assault, civil battery, interference with contractual relations, and interference with prospective contractual relations. The District Court dismissed the Section 1 claim, as well as the § 1981, § 1985, and Title IX claims, in an oral Order on June 21, 2004. Stark then withdrew her § 1981 claim. Stark's second amended complaint pursues some 11 causes of action, only one of which is federal, the Section 2 claim that the District Court dismissed in a written Order dated March 31, 2005. Pursuant to 28 U.S.C. § 1367(c)(3), the District Court then dismissed Stark's pendant state law claims without prejudice. On appeal, Stark challenges only the dismissal of her Section 1 and Section 2 claims.

*v. Greate Bay Casino Corp.*, 232 F.3d 173, 183 (3d Cir. 2000).

Both the first amended and second amended complaints allege that Anon economically retaliated against Stark and BCRS after Stark rebuffed Anon's sexual advances and sexual harassment. In the first amended complaint, Stark alleged the retaliation constituted both a restraint of trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as monopolization, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. In an attempt to make out these antitrust claims, the first amended complaint averred in pertinent part:

> ¶ 2:   Stark is a "Registered Nurse [who] performs regulatory, compliance, patient *management* . . . and other *services in support of* clinical studies . . . . In that capacity she began working in conjunction with [Anon] and [ENT], respectively a *physician* and organization *engaged in research* . . . ." (emphasis added).
>
> ¶ 15:  "*BCRS administers contracts* with Erie area physician's offices . . . ." (emphasis added).
>
> ¶ 74, 98:  [In retaliation for Stark rebuffing Anon,] "Plaintiff [was told she] would no longer have access to the ENT facilities without a monitor," and one of Anon's colleagues said "he was changing all of the locks at ENT."
>
> ¶ 84, 98:  "Anon launched at least one research study in competition with [BCRS]."
>
> ¶ 104:  "There exists in the Northwest region of Pennsylvania . . . a substantial market for *drug research contracts*." (emphasis added).
>
> ¶ 106: "Anon and ENT control almost exclusively a substantial portion of *that market, including drugs used to diagnose* and treat ear, nose, and throat illnesses." (emphasis added).
>
> ¶ 108:  "Beginning in March 2003, Anon *and/or* ENT *and/or* Budacki *and/or* others undertook to injure [Stark] by combining and/or conspiring to restrain interstate commerce in the NW Region [of Pennsylvania] and/or by combining

and/or conspiring to monopolize and/or attempt to monopolize the *drug research market* in the NW region." (emphasis added).

In a June 21, 2004 oral Order after hearing argument on Appellees' motions to dismiss this and other claims, the District Court dismissed Stark's Section 1 claim on the grounds that the first amended complaint averred only unilateral action by ENT, its owner, and its employee. The District Court also determined that Stark's averments failed to adequately identify unnamed others with whom Anon, ENT, or Budacki allegedly conspired. The District Court went on to find deficiencies with the first amended complaint's averments as to a Section 2 claim, but granted Stark leave to re-plead her Section 2 claim if she so desired.

Stark's subsequent second amended complaint averred, *inter alia*, the following in support of a Section 2 claim:

¶ 6: "BCRS is a *site management* organization . . . ." (emphasis added)

¶ 7: "[ENT] is a *medical* practice . . . ." (emphasis added)

¶ 8: "[Dr. Anon] is a *physician* employed by ENT and/or an owner of ENT." (emphasis added).

¶ 25: "[Stark and BCRS] perform[] regulatory, compliance, patient management, . . . and other services in support of clinical studies of medications . . . ."

¶ 26: "BCRS is a research study *contractor to* various drug *manufacturers* and drug *research firms*. BCRS *administers contracts* with Erie area physicians' offices *for various drug firms*. BCRS *pays* physicians and physician's offices for the research [they perform]." (emphasis added).

¶ 28: "The relationship between [BCRS and Stark] and [ENT and Anon] was essentially one of contractor and subcontractor . . . ."

¶ 124: " . . . ENT and [Anon] launched one or more *competitive* research projects designed to harm [Stark's and BCRS's] relationships with drug firms." (emphasis added).

¶ 150: "At least one competing area ear, nose and throat physician has merged with ENT as a result of [ENT's monopoly power and] undue pressure."

¶ 152: "[One doctor] rejected an offer to merge with ENT. Thereafter, [ENT and Anon] intentionally interfered with [the doctor's] staff privileges at the local hospital as well as interfered with [his] ability to lecture and interface with the pharmaceutical industry."

¶ 153: "[ENT's and Anon's] actions were so obstructive that [the doctor] was unable to compete and he was forced to leave Erie and move to another state to practice."

¶ 154: "As a result of [ENT's and Anon's] monopolistic actions, ENT and its physicians are the only ear, nose and throat physicians in the [Erie area] who have the necessary patient base and who perform the full range of services . . . which are often part of the relevant clinical trials."

¶ 157: "[ENT and Anon] perform the research activities for these types of clinical trials, while [BCRS and Stark] perform . . . services in support of these types of clinical trials."

The District Court dismissed the Section 2 claim in the second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) because it concluded that, at its core, the second amended complaint averred that BCRS was a company that administered contracts in support of medical drug studies, on behalf of drug companies, and therefore did not participate or compete in the same market with ENT, a medical practice that, among other things, actually performed medical studies.

II.

As we observed in *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d

Cir. 1998), our task is to "determine whether the injury [plaintiff] alleges can legally form the basis for relief under the antitrust laws." *Id.* at 263. In so doing, we have "an obligation . . . to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *Id.* "We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *Id.* Accordingly, we "need not accept as true 'unsupported conclusions and unwarranted inferences.'" *Id.* at n.13 (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1996), *cert. denied*, 522 U.S. 977 (1997)). Nor need we "assume that the [plaintiff] can prove facts that it has not alleged . . . ." *Id.* (quoting *Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

### III.

Stark raises two issues on appeal: whether her second amended complaint adequately pleaded the required elements of a Section 1 claim, and whether it adequately pleaded antitrust standing in support of a Section 2 claim. We address these in order.

### A.

In *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 999 (3d Cir. 1994), we explained that "[t]he very essence of a Section 1 claim . . . is the existence of an agreement," because "Section 1 liability is predicated upon some form of concerted action." Stark and BCRS asserted two such theories of concerted action in the first amended complaint: an agreement among "Anon *and/or* ENT *and/or* Budacki *and/or* others . . . to injure [Stark] by combining and/or conspiring to restrain interstate

6

commerce in the NW Region [of Pennsylvania]," First Amended Complaint ¶ 108, and agreement among "Anon *and/or* ENT *and/or* Budacki" contrary to ENT's interests. *Id.*

As we held in *Rossi v. Standard Roofing, Inc.* 156 F.3d 452 (3d Cir. 1998), unilateral activity by a defendant, no matter the motivation, cannot give rise to a Section 1 violation. *Rossi*, 156 F.3d at 465. Here that is the only Section 1 averment that Stark and BCRS make. They aver that Anon, through ENT, "launched at least one research study in competition with BCRS" in retaliation for her rebuffing his sexual advances, as averred in Paragraphs 84 and 98 of the first amended complaint. This is an allegation of *increased* competition initiated by unilateral activity on the part of ENT, its owner, Dr. Anon, and its employee, Mr. Budacki. As such, it violates neither the letter or policy of the antitrust laws.

Stark next argues that her averments qualify for "an exception to the ordinary rule that 'officers or employees of the same firm do not provide the plurality of actors imperative for a Section 1 conspiracy.'" *Weiss v. York Hosp.*, 745 F.2d 786, 813 (3d Cir. 1984) (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)). To trigger this limited exception, Stark must allege that Anon or an employee of ENT was acting outside ENT's interests. *Copperweld*, 467 U.S. at 770 n.15 (citing, *inter alia*, *Johnston v. Baker*, 445 F.2d 424, 426-27 (3d Cir.1971)). Here, according to the first amended complaint, only two actors could so act: Dr. Anon and Mr. Budacki. As to the former, Stark has alleged a desire to harm BCRS in particular and a desire to increase ENT's market share in drug research contracts. As to the latter, Stark has alleged that Mr. Budacki assisted Dr. Anon in achieving those goals. None of this constitutes a sufficient

7

averment that Anon or Budacki were acting outside ENT's interests, and we may not draw that inference. "[A]ntitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). "[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Id.* This is because there is "often a fine line separat[ing] unlawful concerted action from legitimate business practice." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). For these reasons, the District Court did not err in dismissing the Section 1 claim.

**B.**

We also agree with the District Court that the second amended complaint fails to plead antitrust standing in support of a Section 2 claim. Antitrust standing is, of course, more than the "injury in fact" and the "case or controversy" required by Article III of the Constitution. Rather, the doctrine reflects additional prudential concerns. *See, e.g., Assoc. Gen.*, 459 U.S. at 545; *West Penn Power,* 147 F.3d at 263. Accordingly, we have held, in cases such as *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178 (3d Cir. 1997), that entities such as brokers of a good or service are not competitors of companies that actually supply the good or service, and that they consequently lack antitrust standing. *See id.* at 184. This logic is controlling here.

Here, the second amended complaint avers that Dr. Anon and ENT perform medical research while Stark and BCRS do not. Rather, as at least Paragraphs 6, 25, 26, and 157 of the second amended complaint allege, Stark and BCRS merely provide

8

administrative and contractual support, since "BCRS is a research study *contractor to various drug manufacturers and drug research firms*." Second Amended Complaint ¶ 26 (emphasis added). "BCRS *administers contracts* with Erie area physicians' offices *for various drug firms*." *Id.* (emphasis added). This distinction is also the reason why, to the extent Stark attempts to rely on it, our decision in *Carpet Group Intern. v. Oriental Rug Importers Assoc.,* 227 F.3d 62 (3d Cir. 2000), is distinguishable. There, everybody involved was trying to do the same thing: sell carpet. That is not the case here.

The factors relevant to an antitrust standing analysis are: (1) the causal connection between the antitrust violation and the harm, and the defendant's intent to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's injury is the type which the antitrust laws were intended to redress; (3) the directness of the injury; (4) the existence of more direct victims; and (5) the potential for duplicative recovery or complex apportionment of damages. *See, e.g., Barton & Pittinos*, 118 F.3d at 181 (citing *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-66 (3d Cir. 1993)).

Applied here, these factors show the District Court did not err in dismissing Stark's Section 2 claim. First, Stark does not aver a direct nexus between Anon's alleged monopolization of the market for ear, nose and throat physicians and their medical research, on the one hand, and the separate market for *contract support*, which is the only market in which Stark and BCRS may participate. Stark *cannot* participate in the former market, as she is not a medical doctor, and there is no allegation that Anon and ENT have attempted to monopolize the latter market of contract support. To the contrary, as discussed, Stark and BCRS aver that "ENT and [Anon] launched one or more

9

*competitive* research *projects*." (emphasis added). Second Amended Complaint ¶ 124.

Second, we ask if the antitrust laws are intended to address the alleged injury. The thrust of Stark's second amended complaint is that Anon engaged in economic retaliation after she rebuffed his sexual advances. It also alleges that BCRS, a contractor to multiple drug firms, contracts with *multiple* physicians' offices. *See* Second Amended Complaint, ¶ 26 ("BCRS is a research study contractor to various drug manufacturers and drug research firms. BCRS administers contracts with Erie area *physicians' offices* for various drug firms.") (emphasis added). Lacking are the classic indicia of injury for which the antitrust laws were designed, such as increased prices for consumers or a reduction of consumer options.

Third, for these reasons, there is substantial risk that the antitrust injury averred in the second amended complaint is speculative. Indeed, fourth, if Anon and ENT were attempting to monopolize physician research, more direct victims would exist, such as the doctors mentioned in Paragraphs 150, 152, and 153 of the second amended complaint. Fifth, and finally, there exists the potential for duplicative recovery should Stark and BCRS recover on both their Section 2 claim and their state law claims. This is because the second amended complaint avers that all of Stark's and BCRS' causes of action arise from the same nucleus of underlying facts—Anon's retaliation after Stark discouraged his sexual advances.

The analysis of these five factors shows that both Stark and BCRS lack antitrust standing for their Section 2 claim, as the District Court properly concluded. *See, e.g, Barton & Pittinos*, 118 F.3d at 181. Stark argues that the harm BCRS suffered is

"inextricably intertwined" with Anon/ENT's alleged wrongdoing, but that narrow exception is limited to instances where parties operate in the same market and are engaged in the same activity. *See, e.g., Carpet Group Int'l*, 227 F.3d at 76-77 (discussing "inextricably intertwined" exception where all parties sold carpet).

For these reasons, the District Court did not err in dismissing Stark's Section 2 claim.

IV.

We will affirm the June 21, 2004 and March 31, 2005 Orders of the District Court.